UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ROLON MORRIS,<br><br>             Plaintiff,<br><br>      v.<br><br>CLARK PACIFIC, a California General Partnership; DOES 1-20 Individually and in official capacities, inclusive,<br><br>             Defendants. | Case No. 2:20-cv-01291 WBS CKD<br><br>ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION |

----oo0oo----

Plaintiff Rolon Morris brought this action against his former employer, defendant Clark Pacific, alleging that he was wrongfully terminated, discriminated against, and harassed on the basis of his race in violation of federal and state workplace antidiscrimination laws. (See generally First Amended Compl. ("FAC") (Docket No. 11).) Defendant has filed a motion to compel arbitration and stay judicial proceedings. (Mot. to Compel Arbitration (Docket No. 13).)

1

I.   Facts & Procedural History

Plaintiff worked for defendant as a laborer at defendant's Woodland, California manufacturing facility (the "Woodland Plant") from October 8, 2018 until mid-February 2020. (FAC ¶ 1.)  Defendant manufactures molds and other pieces for large-scale construction projects.  (FAC ¶ 9.)

Plaintiff alleges that, as an African American man, he was subjected to discrimination and harassment based on his race throughout his time working for defendant.  (See FAC ¶¶ 14-39.) Plaintiff alleges that several white employees made overt references to or otherwise claimed affiliation with a white supremacist prison gang, referred to African-American employees as "monkeys," and referred to certain jobs as "nigger jobs," leading to a hostile work environment for African-American employees.  (See FAC ¶¶ 18-23.)  Plaintiff further alleges that he was paid less than white employees who performed the same work, that he was routinely required to do work outside of his classification without proper trainings or state-mandated certifications and without receiving additional monetary compensation for the work, and that white employees received credit for his work and were promoted in his place.  (See FAC ¶¶ 26-29.)

In February 2020, plaintiff complained to defendant's Human Resource Department regarding the racial discrimination and harassment he faced in the workplace.  (See FAC ¶ 30.)  Shortly after receiving plaintiff's complaint, defendant required plaintiff to take a drug test which it claimed was being randomly administered.  (FAC ¶ 32.)  After plaintiff completed the test,

2

the individual who administered the test, an agent of defendant, informed plaintiff that he had tested negative, but that another sample was required because the first sample had been "too warm." (FAC ¶ 34.)  The agent informed plaintiff that he would have to observe plaintiff's genitalia while providing the second sample to ensure its integrity.  (Id.)  Plaintiff complained to a foreman at the Woodland Plant that no other employees had been required to expose themselves during a drug test, but the foreman reaffirmed that plaintiff would in fact have to expose his genitals while providing the additional urine sample.  (FAC ¶¶ 36-37.)  Plaintiff maintains that this series of successive drug tests, along with the requirement that the agent administering the test observe plaintiff's genitalia, constituted an act of retaliation for the complaint plaintiff had lodged with defendant's Human Resources Department.  (See id.)

All employees in the production and maintenance departments of the Woodland Plant, including plaintiff, must be a member in good standing with the Laborers Local No. 185 union ("the Union").  (Decl. of Scott Maddux, Ex. A §§ 2, 3 ("Woodland Plant CBA") (Docket No. 15).)  The employees are therefore subject to the Collective Bargaining Agreement entered into on August 20, 2015, between defendant and the Union.  (Id.)  Section IV of the CBA addresses "Equal Employment," stating:

> It is mutually agreed by the Employer and the Union to fully comply with all the provisions of Title 7 of the Civil Rights Act of 1964, Presidential Executive Order #11246. The [sic] California Fair Employment Practices Section, and the Americans with Disability Act of 1990, to the end that no person shall, on the grounds of sex, race, color, disability or national origin, be excluded

3

```
            from participation in, be denied the benefits
            of,  or  be  otherwise  subjected  to
            discrimination by not having full access to
            the  contents  of  Section  III  of  this
            Agreement.
```

(Woodland Plant CBA § IV.)

Section III of the CBA is a union security clause. (See Woodland Plant CBA § III.)  It requires that employees be in good standing with the Union by their 30th day of employment, that the Union be given the same opportunity as other recruitment sources to provide qualified applicants for defendants' consideration when more employees are needed, and that defendant refrain from discharging an employee for 48 hours following written notice from the Union that the employee is no longer in good standing with the Union.  (See id.)

Section XII of the CBA establishes a multistep grievance procedure for the parties to the agreement.  (See Woodland Plant CBA § XII.)  Under the procedure, disputes involving alleged violations of the CBA "shall first be discussed between a representative of the union and the Employer."  (See id.)  If a resolution is not achieved within five working days, Section XII authorizes either party to escalate the dispute, including by proceeding to arbitration.  (Id.)  Section XII states that "only those disputes which involve an alleged violation of this Agreement shall be grieved and/or arbitrated." (See id.)

Exhibit 5 to the CBA establishes parameters that defendant must follow in establishing a drug testing program. (See Woodland Plant CBA, Ex. 5.)  Exhibit 5 states that "the

4

1   Employer may establish a substance abuse testing program in its
2   Woodland Yard on a non-discriminatory basis." (Id.)  Exhibit 5
3   authorizes defendant to test all applicants, employees involved
4   in an accident, "all employees for reasonable suspicion," and
5   "all employees on an all inclusive or random basis." (Id.)
6         Following his discharge, plaintiff filed this action,
7   claiming that defendant's discrimination and harassment violated
8   (1) 42 U.S.C. § 1981; (2) Title VII of the Civil Rights Act of
9   1964, 42 U.S.C. §§ 2000(e), et seq.; (3) the California Fair
10  Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940; (4)
11  California Unfair Competition law, Cal. Bus. & Prof. Code §
12  17200, California public policy against wrongful termination; and
13  (5) the Bane Act, Cal. Civ. Code § 52.1.  Defendant argues that
14  Section XII of the CBA compels arbitration of plaintiff's claims.
15  (See generally Def.'s Mot. to Compel Arbitration.)

16  II.  Legal Standard

17        The Federal Arbitration Act ("FAA") provides that that
18  an arbitration clause in a contract "shall be valid, irrevocable,
19  and enforceable, save upon such grounds as exist at law or in
20  equity for the revocation of any contract." 9 U.S.C. § 2; Stolt-
21  Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682
22  (2010).  "The central or primary purpose of the FAA is to ensure
23  that private agreements to arbitrate are enforced according to
24  their terms."  Id.
25        Under section 4 of the FAA, "a party to an arbitration
26  agreement may petition a United States district court for an
27  order directing that 'arbitration proceed in the manner provided
28  for in such agreement.'" Id. (quoting 9 U.S.C. § 4).  The FAA

"limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" Munro v. Univ. of S. Cal., 896 F.3d 1088, 1091 (9th Cir. 2018) (internal citations omitted).  The court "may take judicial notice of a CBA . . . [as] such documents properly are considered [ ] materials 'not subject to reasonable dispute' because they are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" Densmore v. Mission Linen Supply, 164 F. Supp. 3d 1180, 1187 (E.D. Cal. 2016) (O'Neill, J.) (quoting Jones v. AT&T, No. C 07-3888 JF (PR), 2008 WL 902292, at *2 (N.D. Cal. Mar. 31, 2008)).

III. Discussion

    A.   Defendant's Request for Judicial Notice

Defendant requests that the court take judicial notice of the CBA signed by defendant and the Union on August 20, 2015. (See Def.'s Req. Judicial Notice (Docket No. 16).)  Plaintiff does not dispute the authenticity of the CBA, that he was a member of the Union, or that he was a covered employee according to the terms of the CBA when the allegations in his complaint took place.  (See Pl.'s Opp'n at 6 (Docket No. 18).)

Because the CBA is not subject to reasonable dispute and will aid the court in assessing the merits of defendant's motion to compel arbitration, the court will grant defendant's request for judicial notice.  See Densmore, 164 F. Supp. at 1187.

    B.   Whether the CBA Clearly and Unambiguously Requires Plaintiff to Arbitrate his Statutory Antidiscrimination Claims

A term in a CBA requiring arbitration of employment-

6

1  related discrimination claims is enforceable as a matter of
2  federal law as long as it "clearly and unmistakably" requires
3  union members to arbitrate their claims, "unless Congress itself
4  has evinced an intention to preclude a waiver of judicial
5  remedies for the statutory rights at issue." 14 Penn Plaza LLC
6  v. Pyett, 556 U.S. 247, 256, 272 (2009) (quoting Gilmer v.
7  Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991)).

8  　　　　In Pyett, the Supreme Court held that a CBA between the
9  defendant and the union required union members to arbitrate their
10 claims under the Age Discrimination in Employment Act of 1967
11 ("ADEA") because the CBA clearly and unmistakably encompassed
12 statutory claims of age discrimination. See Pyett, 556 U.S. at
13 274.  The CBA provision addressing age discrimination read as
14 follows:

> ¶30. NO DISCRIMINATION ¶ "There shall be no discrimination against any present or future employee by reason of race, creed, color, age, disability, national origin, sex, union membership, or any characteristic protected by law, including, but not limited to, claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the New York State Human Rights Law, the New York City Human Rights Code, ... or any other similar laws, rules or regulations. All such claims shall be subject to the grievance and arbitration procedure (Articles V and VI) as the sole and exclusive remedy for violations. Arbitrators shall apply appropriate law in rendering decisions based upon claims of discrimination."

Id. at 252.  There, the CBA "expressly reference[d] the statutory claim at issue."  Pyett, 556 U.S. at 263; see also Duraku v. Tishman Speyer Props., Inc., 714 F. Supp. 2d 470, 473 (S.D.N.Y.

7

1    2010) (ordering that a plaintiff's claims under Title VII and New
2    York state antidiscrimination laws be submitted to arbitration
3    because the CBA at issue "expressly require[d] the resolution of
4    plaintiffs' statutory claims through mediation and/or
5    arbitration").
6         Here, in contrast, the CBA invokes Title VII and the
7    California Fair Employment and Housing Act, but with specific
8    reference to Section III of the agreement, the union security
9    clause.  (See Woodland Plant CBA § IV.)  In Section IV, the Union
10   and defendant mutually agree that they will fully comply with
11   Title VII and California antidiscrimination law "to the end that
12   no person shall, on the grounds of sex, race, color, disability,
13   or national origin, be . . . subjected to discrimination by not
14   having full access to the contents of Section III of this
15   Agreement."  (Id.)  In other words, by its own terms, Section IV
16   is limited to ensuring that employees will be able to obtain good
17   standing with the Union, that defendant give equal consideration
18   to Union members when seeking additional employees, and that all
19   employees be given a 48-hour grace period before being discharged
20   if they do not pay union dues, irrespective of the employees'
21   sex, race, color, disability, or national origin.  (See Woodland
22   Plant CBA § III.)
23        Thus, when section XII of the Woodland Plant CBA states
24   that any "disputes which involve an alleged violation of this
25   Agreement shall be grieved and/or arbitrated," it is not
26   referencing any instance of discrimination or harassment that an
27   employee of defendant might experience.  (Woodland Plant CBA §
28   XII.)  The CBA merely contemplates that it will govern disputes

8

involving discrimination and harassment related to section III's union security clause.  (See id.)

Additionally, even if section IV of the Woodland Plant CBA were applicable to more than just section III, section XII would still not "clearly and unmistakably" require Union members to arbitrate statutory antidiscrimination claims, because it does not "expressly reference the statutory claim at issue." Id. Section IV references Title VII and California antidiscrimination law, but it does not address claims of any kind, let alone "claims made pursuant to Title VII of the Civil Rights Act" or other state antidiscrimination laws.  See id. at 252.

Similarly, section V(m) of the CBA, which addresses paid sick leave, states that paid sick leave will be provided "as per California law."  (Woodland Plant CBA § V(m).)  It then states: "[a]ny disputes regarding the application of this provision will be resolved by final and binding arbitration in accordance with the grievance procedures set forth in Section No. XII."  (Id.)  As with section IV's reference to California discrimination law, section V(m) does not clearly or expressly reference claims made under antidiscrimination statutes.  See Pyett, 556 U.S. at 263.

The Woodland Plant CBA therefore does not "clearly and unmistakably" require Union members to arbitrate claims of discrimination and harassment brought under Title VII or California antidiscrimination laws.  See id. at 274. Accordingly, the court finds that the CBA's arbitration clause

9

does not apply to plaintiff's claims in this case.[1]  See id.

    B.   Whether LMRA Section 301 Preempts Plaintiff's State Law Claims

Even when a CBA does not "clearly and unmistakably" require union members to arbitrate their statutory antidiscrimination claims, claims based upon violations of state law may nevertheless be preempted by the Labor Management Relations Act ("LMRA").  See Dent v. Nat'l Football League, 902 F.3d 1109, 1116 (9th Cir. 2018).  LMRA section 301 directs "federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." Kobold v. Good Samaritan Reg'l Med. Ctr., 832 F.3d 1024, 1032 (9th Cir. 2016) (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985)).  "[T]his federal common law preempts . . . state law claims grounded in the provisions of a CBA or requiring interpretation of a CBA."  Id. (citing Lueck, 471 U.S. at 210-11).

Preemption under the LMRA is, "in effect, a kind of 'forum' preemption," in that state law is preempted "only insofar as resolution of the state-law claim requires the interpretation of a collective-bargaining agreement."  Alaska Airlines Inc. v. Schurke, 898 F.3d 904, 922 (9th Cir. 2018) (en banc) (quoting

---

[1] Because the Woodland Plant CBA does not "clearly and unmistakably" require Union members to arbitrate their claims, the court does not reach the question of whether Congress "evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue" when it passed Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.  See Pyett, 556 U.S. at 256.

10

1   Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 409 n.8
2   (1988)).  If Section 301 is found to preempt the plaintiff's
3   state law claims, federal common law requires "specific
4   performance of CBA terms requiring the grievance and arbitration
5   of disputes."  Alaska Airlines, 898 F.3d at 918 n.7 ("[T]he end
6   purpose[] of LMRA § 301 preemption . . . [is] to enforce 'a
7   central tenet of federal labor-contract law . . . that it is the
8   arbitrator, not the court who has the responsibility to interpret
9   the labor contract in the first instance.'") (citing Lueck, 471
10  U.S. at 220)); Textile Workers Union of America v. Lincoln Mills
11  of Ala., 353 U.S. 448, 450-51 (1957).

12          The Ninth Circuit has articulated a two-part test to
13  determine whether a state law claim is "grounded in the
14  provisions of a CBA or requiring interpretation of a CBA" and
15  thus preempted by LMRA section 301.  Kobold, 832 F.3d at 1032.
16  "First, a court must determine 'whether the asserted cause of
17  action involves a right conferred upon an employee by virtue of
18  state law, not by a CBA.  If the right exists solely as a result
19  of the CBA, then the claim is preempted, and [the] analysis ends
20  there.'"  Id. (quoting Burnside v. Kiewit Pac. Corp., 491 F.3d
21  1053, 1059 (9th Cir. 2007)).

22          "If the court determines that the right underlying the
23  plaintiff's state law claim(s) 'exists independently of the CBA,'
24  it moves to the second step, asking whether the right is
25  nevertheless 'substantially dependent on analysis of a
26  collective-bargaining agreement.'"  Id. (quoting Burnside, 491
27  F.3d at 1059).  "Where there is such substantial dependence, the
28  state law claim is preempted by § 301."  Id.

        Here, there can be little doubt that plaintiff's state law claims survive the first prong of the Kobold test.  See Kobold, 832 F.3d at 1032.  Plaintiff claims that defendant discriminated against him based on his race by requiring him to perform work for which he had not been trained, by denying him additional compensation for said work, by denying him opportunities for promotion that other employees were granted, and by rewarding other employees for the work plaintiff had performed.  (See FAC ¶¶ 27-37.)  Plaintiff claims that several white employees claimed to be part or, or otherwise made references to, a white supremacist prison gang and made other comments denigrating African Americans generally, contributing to a hostile work environment for African Americans at defendant's facility.  (See FAC ¶¶ 21-25.)  Plaintiff further claims that, in response to a complaint he made to Human Resources about his disparate treatment and the overall hostile work environment for African-American employees at defendant's facility, he was made to take two drug tests consecutively when other employees were not and that he was required to show his genitalia while giving the second drug test where other employees were not.  (See id.)

        Plaintiff's claims allege violations of rights bestowed upon him by California antidiscrimination law, including the right (1) to be free of disparate treatment based on race in the workplace, see Cal. Gov't Code § 12940(a); (2) to be free of harassment due to a hostile work environment, see id. § 12940(j); (3) to be free from retaliation after complaining about the presence of discrimination or harassment, see id. § 12940(h); (4) to rely on one's employer to prevent discrimination and

harassment, see id. § 12940(k); (5) to be free of unfairly competitive practices, including unlawful intentional discrimination, see Cal. Bus. & Prof. Code § 17200; (6) not to be wrongfully terminated on discriminatory grounds or in retaliation for reporting discrimination and harassment, see Cal. Gov't Code. § 12900; Cal. Const. art. I, § 8; and (7) not to be deprived of federal or state constitutional rights through intimidation and coercion, see Cal. Civ. Code § 52.1.

Because the CBA is not the "only source" of plaintiff's claims, and plaintiff's claims do more than just refer to CBA-defined rights, his claims are not preempted under the first Kobold prong. See Alaska Airlines, 898 F.3d at 921; see also Ramirez v. Fox Television Station, 998 F.3d 743, 748 (9th Cir. 1993) ("In every case in which we have considered an action brought under the California [Fair Employment and Housing Act], we have held that it is not preempted by section 301." (collecting cases)); Smith v. Greyhound Lines, Inc., No. 1:18-cv-01354 LJO BAM, 2018 WL 6593365 (E.D. Cal. Dec. 14, 2018) (holding claims under Gov't Code § 12940 "explicitly arise[] under California law and exist[] independent of the particular terms of the CBA").

Moving to the second Kobold factor, plaintiff's claims are not "substantially dependent" on an analysis of the CBA. See Kobold, 832 F.3d at 1032. Under the second prong, the court must "ask whether litigating the state law claim nonetheless requires interpretation of a CBA, such that resolving the entire claim in court threatens the proper role of grievance and arbitration." Alaska Airlines, 898 F.3d at 921. "'Interpretation' is construed

13

1  narrowly; "it means something more than 'consider,' 'refer to,'
2  or 'apply.'" Id. (quoting Balcorta v. Twentieth Century-Fox Film
3  Corp., 208 F.3d 1102, 1108 (9th Cir. 2000)).

4      Where a court is only required to "look to" the CBA to
5  resolve the plaintiff's claim, there is no preemption. Cramer v.
6  Consolidated Freeways, Inc., 255 F.3d 683, 691 (9th Cir. 2001)
7  (quoting Livadas v. Bradshaw, 512 U.S. 107, 124-25 (1994)). "The
8  plaintiff's claim is the touchstone for this analysis; the need
9  to interpret the CBA must inhere in the nature of the plaintiff's
10 claim." Id. "If the claim is plainly based on state law, § 301
11 preemption is not mandated simply because the defendant refers to
12 the CBA in mounting a defense." Id. (citing Caterpillar Inc. v.
13 Williams, 482 U.S. 386, 398-99 (1987)).

14     Defendant contends that the court will necessarily have
15 to interpret the terms of the CBA establishing defendant's drug
16 testing protocols when it evaluates plaintiff's claims that he
17 was retaliated against and wrongfully terminated, since plaintiff
18 will have to show that defendant's stated reason for termination-
19 -refusing to submit to a drug test--was pretextual. (See Def.'s
20 Opp'n at 4.) Similarly, defendant argues that the court will
21 necessarily have to interpret the CBA's terms related to wages,
22 classification, eligibility for promotion, seniority status, and
23 training to assess plaintiff's claims of discrimination and
24 harassment. (See Def.'s Opp'n at 6-7.)

25     However, plaintiff's claims are that defendant's
26 administration of the two drug tests constituted retaliation for
27 his complaints of discrimination and harassment due to
28 defendant's demand that he reveal his genitals while providing a

14

urine sample, and that he was underpaid for the work he was required to perform compared to his white counterparts. (See FAC §§ 26-73.) Defendant may argue that the drug tests administered to plaintiff were in fact "random" as required under the CBA, that a second urine sample was warranted under the terms of the CBA, or that plaintiff's pay and the jobs he was required to work were appropriate according to the terms of the CBA (see Woodland Plant CBA § V, Ex. 5), but a plaintiff's state law claims are not preempted by LMRA section 301 merely because the defendant will "refer to the CBA in mounting its defense." Cramer, 255 F.3d at 691.

There is no "active dispute" in this case "over the meaning of [the] terms" of the CBA. See Alaska Airlines, 898 F.3d at 921. Plaintiff does not seek to interpret the CBA's provisions regarding the substance abuse testing program, which authorize defendant to establish a drug abuse testing program, provided it is "non-discriminatory" and tests employees "on an all inclusive or random basis." (See Woodland Plant CBA at Ex. 5.) Rather, plaintiff's claim is that the specific drug tests he was required to take were pretexts used by defendant to retaliate against him for complaining about discrimination and harassment. (See FAC §§ 32-36.)

Determining whether the tests were, in fact, retaliatory will not require an interpretation of the CBA's use of the word "random" or "non-discriminatory." Plaintiff can succeed on his claim by showing that the motivating factor behind defendant's request that plaintiff submit to the drug tests at issue or defendant's decision to terminate plaintiff was

plaintiff's opposition to practices of discrimination and harassment at defendant's facility.  See Cal. Gov't Code § 12940(h) (prohibiting employers from "discharge[ing], expel[ling], or otherwise discriminat[ing] against any person because the person has opposed [discrimination or harassment]").

Though this claim may require the court to "consider" or "look to" the CBA, it will not require the court to resolve contested interpretations of the CBA's language.  See Alaska Airlines, 898 F.3d at 927 ("reliance on and reference to CBA-established or CBA-defined terms of employment do not make for a CBA dispute if there is no disagreement about the meaning or application of any relevant CBA-covered terms of employment").  The same reasoning applies to plaintiff's claims of discrimination and harassment based on the work plaintiff was assigned and his rate of pay.  See Ramirez, 998 F.3d at 748-49.

The Ninth Circuit's decision in Ramirez v. Fox Television Station, 998 F.3d 743, 748 (9th Cir. 1993), is instructive.  There, the Ninth Circuit held that the plaintiff's antidiscrimination claims brought under the FEHA were not preempted by LMRA section 301 because they did not require the court to interpret the terms of the CBA at issue.  See id. at 748-49.  Discussing an allegation by the plaintiff that only Hispanic employees, like the plaintiff, needed to submit jury-service verification forms, the court stated: "The Bargaining Agreement may be crystal clear--that all or no employees need such verification forms--but [defendant] nonetheless may have ignored the Bargaining Agreement in Ramirez's case or applied it to her in a discriminatory manner."  Id. at 749.  "Thus,

1 reference to or consideration of the terms of a collective-
2 bargaining agreement is not the equivalent of interpreting the
3 meaning of the terms. If it were, all discrimination actions
4 brought by unionized employees would be preempted because the
5 starting point for every case would have to be the agreement."
6 Id.

7      For the same reasons as those articulated in Ramirez,
8 references to the CBA in this case do not rise to the level of
9 "interpretation" warranting LMRA preemption.  Plaintiff does not
10 dispute that the Woodland Plant CBA authorizes defendant to
11 establish random drug testing protocols or certain pay and
12 classification schemes.  Plaintiff claims that defendant ignored
13 these protocols and schemes or applied them to him in a
14 discriminatory manner.  See id.  Accordingly, plaintiff's claims
15 under state antidiscrimination law are not substantially
16 dependent on an analysis of the Woodland Plant CBA.  See Kobold,
17 832 F.3d at 1032.

18      Because plaintiff's claims do not satisfy either of the
19 Kobold factors, they are not preempted under section 301 of the
20 LMRA and specific enforcement of the CBA's arbitration provision
21 is not warranted.  See Alaska Airlines, 898 F.3d at 918 n.7.

22      IT IS THEREFORE ORDERED that defendant's motion to
23 compel arbitration (Docket No. 13) be, and the same hereby is,
24 DENIED.

25 Dated:  November 5, 2020

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

17